INGRAM, Justice.
This is the second time the controversy between these parties has reached this Court. See Springer v. Baldwin County Federal Savings Bank, 562 So.2d 138 (Ala.1990) (Springer I). In Springer I, we held that a
“mortgagee who purchases the mortgaged property at a foreclosure sale and then resells it to a third party during the statutory redemption period is required to apply the profit (the sum realized by the mortgagee in excess of the amount it paid at foreclosure) to the reduction of the mortgagor’s debt.”
*678 562 So.2d at 139. However, we did not specifically define “sum realized” or “profit.”
The issue now before this Court is whether the term “profit” or “sum realized” is to be determined with or without consideration of any expenses incurred from the sale of the property by Baldwin County Federal Savings Bank (bank). The bank contends that all of the expenses it incurred in selling the property should be deducted from the amount received to determine the “profit.” Tommy Springer contends that the amount of the sale to the third party ($99,000) is the amount realized to the bank and that the bank must bear its own expenses.
For a history of this case, see Springer I. However, for the purposes of this appeal, we set out the following pertinent facts. Springer defaulted on a note to the bank in an amount over $100,000. That note was secured by certain real property. The bank, as mortgagee, purchased the property at a foreclosure sale, for $88,200. Subsequently, the bank resold the property to a third party for $99,000. The resale occurred during the one-year statutory period of redemption.
As noted above, this Court in Springer I ordered the trial court to credit against Springer’s debt the “sum realized by the Bank in excess of the amount it paid for the property at the foreclosure sale.” 562 So.2d at 140. On remand, the trial court found that the bank had incurred certain expenses in making the sale to the third party. These expenses included a $6,920 sales commission; a tax service fee of $45; a title insurance fee of $346.50; a maintenance fee of $385.82; and county taxes of $507.36. These expenses totalled $8,204.68. The trial court then entered a judgment for the bank in the amount of $31,946.34, based on the conclusion that the sum realized, or the profit, is the amount left over after the deduction of the expenses. (After expenses, the bank realized, by the trial court’s computation, a “profit” of $2,595.32.)
At the outset we would point out that this is not a case involving a redemption. At no time during the one-year period did Springer attempt to redeem the property. Therefore, we are not concerned with what are considered to be “lawful charges” pursuant to the redemption statutes. Rather, we are concerned with those necessary and ordinary expenses incurred in the management of foreclosed property.
In Springer I this Court relied on Bartlett v. Jenkins, 213 Ala. 510, 105 So. 654 (1925), for the proposition that the bank, as trustee for Springer, was obligated to apply the profit realized from the sale to Springer’s debt. As noted above, this Court did not specifically define “profit”; however, in Bartlett it is clear that the “profit” was determined by subtracting certain expenses from the proceeds of the sale. These included expenses of advertising, selling, and conveying the property.
Although this Court in Springer I has held that a mortgagee, in certain circumstances, is in a position of quasi-trustee over the property purchased, we cannot conclude that he is a trustee at his own expense. If this Court were to disallow the recovery of the ordinary and necessary expenses incurred by the bank, we would be thwarting any ultimate benefit to debtors in the future. This is so because a mortgagee (in this case, the bank) would have no incentive to act within the one-year redemption period, because in acting the mortgagee will necessarily spend money, which it would not be allowed to recover. If the mortgagee is disallowed the recovery of these expenses, it would appear that the natural consequence would be for the mortgagee to be reluctant to expend any money to sell the property, and thus there would arise the possibility of no benefit to the debtor.
Springer also contends that a $507 charge for county taxes was assessed twice, once as a component of the agreed deficiency following foreclosure and once as an expense of the subsequent sale. From a review of the record, it does appear that there were two charges for taxes in the amount of $507, but the record does not indicate whether these charges represented a duplication or were for taxes for differ *679 ent years. Nevertheless, this is a fact question that was not presented to the trial court, either at the hearing or after the judgment was rendered. Therefore, it is not properly before this Court now.
This judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.